# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

MARIA PALACIOS, individually and as successor in interest to her deceased son, Ivan Ortiz,

Plaintiff,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No. 20-cv-450-MMA (DEB)

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTY'S MOTION TO DISMISS; (2) GRANTING DEFENDANTS GORE, FRIERSON, AND PATRONS' MOTION TO DISMISS; AND (3) GRANTING DEFENDANT LEE'S MOTION TO DISMISS**

[Doc. Nos. 3, 13, 16]

On March 10, 2020, Plaintiff Maria Palacios ("Plaintiff") filed a Complaint individually and as successor in interest to her deceased son, Ivan Ortiz ("Ortiz"), against Defendants County of San Diego ("County"), William Gore ("Gore"), Erika Frierson ("Frierson"), San Diego County Sheriff's Department Chief Medical Officer ("Chief Medical Officer"), Barbara Ann V. Lee ("Lee"), Rosa Patron ("Patron"), and "Currently Unknown San Diego County Sheriff's Department Personnel" ("Unknown Department

1

Personnel") (collectively, "Defendants"). *See* Doc. No. 1 ("Compl.").[1] Plaintiff alleges ten causes of action: (1) violation of Ortiz's Fourteenth Amendment right to adequate medical care under 42 U.S.C. § 1983; (2) municipal liability against the County pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690–91 (1978), and 42 U.S.C. § 1983; (3) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; (4) violation of California's Unruh Civil Rights Act ("Unruh Act"), California Civil Code §§ 51, 52; (5) violation of California's Disabled Persons Act ("CDPA"), California Civil Code §§ 54–55.32; (6) negligence; (7) negligent hiring, retention, and supervision; (8) violation of Plaintiff's Fourteenth Amendment right to familial companionship under 42 U.S.C. § 1983; (9) wrongful death under California Code of Civil Procedure § 377.60; and (10) intentional infliction of emotional distress. *See* Compl. ¶¶ 82–180.

Three motions to dismiss are before the Court. Defendant County moves to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 3. Plaintiff filed an opposition to the motion, and the County replied. *See* Doc. Nos. 6, 7. Defendants Gore, Frierson, and Patron also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 13. Plaintiff filed an opposition to the motion, and Defendants Gore, Frierson, and Patron replied. *See* Doc. Nos. 15, 19. Defendant Lee further moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 16. Plaintiff filed an opposition to the motion, and Defendant Lee replied. *See* Doc. Nos. 21, 22. The Court found the matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. Nos. 8, 20, 23. It does not appear that Defendant Chief Medical Officer has been served or has otherwise made an appearance.

---

[1] All citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

For the reasons set forth below, the Court **GRANTS in part and DENIES in part** Defendant County's motion to dismiss; **GRANTS** Defendants Gore, Frierson, and Patron's motion to dismiss; and **GRANTS** Defendant Lee's motion to dismiss.

## I. BACKGROUND[2]

This action arises from Ortiz's suicide in the San Diego Central Jail. *See* Compl. ¶¶ 1–6. Plaintiff, Ortiz's mother, brought suit individually for certain claims arising from Ortiz's death and as Ortiz's "sole successor in interest to prosecute those claims which survived [Ortiz's] death." *Id.* at 12.

Ortiz was a pretrial detainee in the County's custody at Central Jail from June 9, 2018 through March 18, 2019. *Id.* ¶ 22. Staff at Central Jail knew that Ortiz "had been diagnosed with schizophrenia and had a history of suicidality." *Id.* ¶ 23. Before March 18, 2019, Ortiz had at least one documented suicide attempt while detained in Central Jail. *Id.*

On March 18, 2019, the County was holding Ortiz "in Central Jail's Psychiatric Stabilization Unit ('PSU')." *Id.*

> On the morning of March 18, 2019, jail staff found Ortiz sitting in his PSU cell with a mark around this neck indicating he had just tried to strangle himself. Jail staff then found a noose made from a towel in [Ortiz's] cell. [Ortiz] told jail staff he was "feeling sad and depressed," and he felt like "ending his life." He told jail staff he was hearing voices telling him to hurt and/or kill himself.

*Id.* ¶ 24. Jail staff then moved Ortiz to a "single-person observation cell within the PSU equipped with video cameras that allowed jail staff to continuously monitor the cell." *Id.* ¶ 25. "[A] currently unknown Department deputy, employee, and/or agent gave [Ortiz]

---

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

food in a plastic bag." *Id.* ¶ 26.  "Jail staff claim they then observed [Ortiz] at 2:55 p.m. without issue.  Jail staff did not then check on [Ortiz] again until 3:40 p.m.  During those forty-five minutes, [Ortiz] suffocated himself." *Id.* ¶ 27.  The recorded video footage shows Ortiz committing suicide: "[Ortiz] can be seen . . . getting the plastic bag, getting into bed, pulling the sheet over his head, and putting the plastic bag over his face until he suffocated." *Id.* ¶ 28.  "When jail staff finally checked on [Ortiz], he was unconscious or dead." *Id.* ¶ 29.  Jail staff called 911.  *Id.*  Ortiz arrived at USCD Medical Center around 4:30 p.m.  *Id.*  "Medical staff at UCSD Medical Center were able to restore [Ortiz's] heartbeat, but he had been deprived of oxygen for too long.  [Ortiz] was pronounced dead at 8:27 p.m." *Id.* ¶ 30.

Plaintiff learned of Ortiz's medical emergency from medical personnel at UCSD Medical Center.  *Id.* ¶ 31.  Plaintiff arrived at UCSD Medical Center as Ortiz's condition deteriorated.  *See id.* ¶¶ 32–33.  Medical personnel "attempted to take [Plaintiff] and her daughter to see [Ortiz] before he died." *Id.* ¶ 33.  However, a Sheriff's Department "deputy, employee, and/or agent outside [Ortiz's] room stopped Ms. Palacios and her daughter cold—preventing them from seeing [Ortiz] one last time before he died." *Id.* ¶ 34.

Plaintiff drove to Central Jail to seek permission to see Ortiz at UCSD Medical Center.  *Id.* ¶ 35.  After an hour-and-a-half passed, a Sheriff Department "deputy, employee, and/or agent" "rudely inform[ed]" Plaintiff that she did not need a permit to see Ortiz because he died.  *Id.* ¶ 36.  Plaintiff and her daughter returned to UCSD Medical Center, and Detective Patron "confronted" and "rudely interrogate[d]" Plaintiff and her daughter.  *Id.* ¶¶ 37–38.  Plaintiff alleges that this interaction caused her severe emotional distress.  *Id.*  Plaintiff further claims that she "suffered damages arising from [Ortiz's] wrongful death and the conscience-shocking deprivation of her parent-child relationship with [Ortiz]." *Id.* ¶ 81.

Based on these allegations, Plaintiff brings ten causes of action against Defendants. *See* Compl. ¶¶ 82–180. Defendants move to dismiss Plaintiff's ten causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. Nos. 3, 13, 16.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *W. Min. Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *See United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "A court may, however, consider certain materials— documents attached to the complaint, documents incorporated by reference in the

complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. Of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998) (citing *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996)).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

### III. DISCUSSION

Through the three motions, Defendants challenge each of Plaintiff's ten causes of action. The Court assesses each of Plaintiff's claims in turn.[3]

---

[3] As a preliminary matter, Defendant County argues that Plaintiff fails to prove that she is Ortiz's successor in interest. *See* Doc. No. 3-1 at 10–12. Plaintiff subsequently filed a declaration to carry her burden. *See* Palacios Decl., Doc. No. 4. The County notes in its reply brief that "Plaintiff has now filed the required declaration regarding her standing as the decedent's successor in interest. The Court may disregard that portion of the County's motion." Doc. No. 7 at 2 n.1. Accordingly, the Court finds this portion of the County's motion is **MOOT** and finds that Plaintiff is Ortiz's successor in interest. *See White v. County of San Diego*, No. 13-cv-1166-MMA (RBB), 2013 WL 12080218, at *5 (S.D. Cal. Aug. 14, 2013).

Additionally, individual Defendants' argue that "[c]laims against individuals in their capacity as County officials are duplicative of claims against the County and should be dismissed." Doc. No. 13-1 at 4; *see also* Doc. No. 16-1 at 4–5. Plaintiff brings her action against Frierson and Lee in their "individual and official capacities," Compl. ¶ 15, but Plaintiff is silent as to whether she brings suit against Gore and Patron in their individual and official capacities. Plaintiff responds that she does not object to Defendants' request to dismiss claims against them in their official capacity. *See* Doc. No. 15 at 6; Doc. No. 21 at 5. Given Plaintiff's nonopposition to Defendants' motion to dismiss the official capacity claims and that such claims are redundant given Plaintiff's claims against the County, the Court **DISMISSES** the official capacity claims against individual Defendants. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55); *id.* (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, (1985)); *see also Poe v. County of Ventura*, No. CV 16-6083 RGK (SKx), 2017 WL 5125748,

**A. 42 U.S.C. § 1983 – First, Second, and Eighth Causes of Action**

   **1. Allegations Against "Currently Unidentified Department Personnel"**

Plaintiff alleges that "Currently Unidentified Department Personnel" are liable for deliberate indifference to serious medical needs and denial of substantive due process under 42 U.S.C. § 1983. *See* Compl. ¶¶ 82–90, 165–72. Defendant County argues that Plaintiff cannot proceed with these two § 1983-based claims because "Plaintiff must establish personal participation in the alleged deprivation of constitutional rights." Doc. No. 3-1 at 12, 26; *see also* Doc. No. 7 at 2, 11. Plaintiff responds that the County "improperly conflate[s] Plaintiff's current ignorance of the Currently Unknown Department Personnel's individual identities with the legal rule against group liability under section 1983." Doc. No. 6 at 10.

The Court construes the "Currently Unknown San Diego County Sheriff's Department Personnel" as doe defendants because Plaintiff has failed to discover their identities. Accordingly, the Court finds the issue of personal participation is distinguishable from the issue of dismissing a claim against a doe defendant where discovery could lead to uncovering unknown identities and where Plaintiff otherwise states a valid claim. *Compare Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (bringing claims against named defendants), *with Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (bringing claims against doe defendants).

In certain circumstances, "where the identity of the alleged defendant[][is] not [] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Wakefield*, 177 F.3d at 1163 (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)) (holding further that the plaintiff alleged sufficient facts to support a

---

at *2 (C.D. Cal. Feb. 3, 2017) (dismissing the official capacity claim as "duplicative and redundant" in light of the claim against the County).

1   claim of deliberate indifference to medical needs and thus the district court erred in

2   dismissing the complaint against the doe defendant).

3        Dismissal of Plaintiff's claims against the doe "Unknown Department Personnel"

4   defendants is premature at this point.  The Court declines to dismiss the deliberate

5   indifference claim against Unknown Department Personnel simply because Plaintiff was

6   not aware of their identities at the time she filed the Complaint.  *See Wakefield*, 177 F.3d

7   at 1163.  Indeed, dismissal would only be warranted if (1) discovery would not uncover

8   their identities or (2) dismissal is warranted on other grounds.  *See id.* (quoting, 629 F.2d

9   642).  Here, the Court finds that discovery could uncover the Unknown Department

10  Personnel's identities.  Additionally, the Court finds that dismissal is not appropriate on

11  "other grounds," such as failure to state a claim, for the reasons provided below.  *See*

12  *infra* Sections III.A.2, III.A.4.

13       Accordingly, the Court need not address Plaintiff's argument regarding personal

14  participation for Plaintiff's § 1983 claims against Unknown Department Personnel.  The

15  Court finds that Plaintiff should have the opportunity to conduct discovery to uncover the

16  identities of the Unknown Department Personnel and then move to amend her Complaint.

17       **2. Deliberate Indifference to Serious Medical Needs – First Cause of Action**

18       Plaintiff's first cause of action is deliberate indifference to serious medical needs

19  under 42 U.S.C. § 1983 against Unknown Department Personnel.  *See* Compl. ¶¶ 82–90.

20  Defendant County argues that Plaintiff fails to plead facts showing that "Currently

21  Unidentified Department Personnel acted with 'deliberate indifference.'"  Doc. No. 3-1 at

22  14.  Specifically, the County asserts that Currently Unidentified Department Personnel

23  did not make an intentional decision to deny Ortiz psychiatric care or to provide the

24  means to commit suicide and that Plaintiff fails to indicate that individual(s) who

25  provided the food in the plastic bag had knowledge of Ortiz's condition.  *Id.* at 15–16.

26  Finally, the County notes that it was "not obvious to jail staff that without additional

27  medical care [Ortiz] would be at risk of substantial harm while confined in the PSU,

28  which was equipped for monitoring and more frequent cell checks than in the general

population." *Id.* at 16.  Plaintiff responds that she has alleged sufficient facts to support her claim of deliberate indifference to Ortiz's medical risks.  Doc. No. 6 at 12.  Plaintiff argues "[e]ach of the Currently Unknown Department Personnel made intentional decisions to, among other things, not provide [Ortiz] with prompt access to a mental-health provider after multiple suicide attempts, to not continuously monitor [Ortiz] after multiple suicide attempts, and to provide [Ortiz] with multiple means to attempt suicide." *Id.*  Plaintiff further claims that the Unknown Department Personnel failed to inform personnel in contact with Ortiz about his condition.  *Id.* at 13.

A pretrial detainee's claim for violations of the right to adequate medical care arises under the Fourteenth Amendment's Due Process Clause.  *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018).  As detailed by the Ninth Circuit,

> the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'"  *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)).  "The '"mere lack of due care by a state official"' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment.'"  *Id.* (quoting *Castro*, 833 F.3d at 1071).  Therefore, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."  *Id.* (footnote omitted) (quoting *Castro*, 833 F.3d at 1071).

Plaintiff alleges that Unknown Department Personnel were deliberately indifferent to Ortiz's serious medical needs in three ways: (1) "failing to provide [Ortiz] with sufficient psychiatric care," (2) "providing [Ortiz] with (or failing to confiscate from [Ortiz]) the means to complete suicide (a plastic bag)," and (3) "leaving [Ortiz] unmonitored for at least forty-five minutes."  Compl. ¶ 87.

As to the first element under *Gordon*, the Court finds that Plaintiff adequately pleads that Unknown Department Personnel made an intentional decision by providing Ortiz with food in a plastic bag without proper monitoring.  *See id.* ¶ 26–29.

As to the second element, Plaintiff plausibly alleges that providing the plastic bag placed Ortiz "at substantial risk of suffering serious harm."  *Gordon*, 888 F.3d at 1124. Plaintiff's allegations indicate that Ortiz had at least one prior suicide attempt, was held in a psychiatric unit, was found in the psychiatric unit with a self-made noose, and expressed suicidal thoughts to jail staff.  *See* Compl. ¶¶ 23–24.  In this context, providing Ortiz with a plastic bag while insufficiently monitored indicates a plausible substantial risk that he would inflict self-harm.

As to the third element, the Court finds that the allegations plausibly indicate that Unknown Department Personnel failed to take objectively reasonable available measures to abate the risk of Ortiz committing suicide.  At the motion to dismiss stage, the Court must assume the truth of Plaintiff's factual allegations and must construe them in the light most favorable to Plaintiff.  *See Cahill*, 80 F.3d at 337–38 (citing *Nat'l Wildlife Fed'n*, 45 F.3d at 1340).  If a detainee with a history of suicidal actions exhibits suicidal ideation and intent is housed within the jail's psychiatric unit and then further attempts suicide while placed in the psychiatric unit, *see* Compl. ¶¶ 23–24, it may be unreasonable to provide a means of suicide to the detainee without proper supervision.  *See Mendoza v. County of San Bernardino*, No. EDCV 19-1056 JGB (SHKx), 2020 WL 2066142, at *6 n.7 (C.D. Cal. Feb. 21, 2020).  Construing the allegations in light most favorable to Plaintiff, the Court finds that Plaintiff has pleaded plausible facts indicating that jail staff were at least objectively reckless in providing a plastic bag to Ortiz while insufficiently

monitored given his recent suicide attempt and continuing suicidal ideations. *See*
*Deloney v. County of Fresno*, No. 1:17-cv-1336-LJO-EPG, 2019 WL 1875588, at *8
(E.D. Cal. Apr. 26, 2019) (finding the plaintiff's allegations sufficient to defeat a motion
to dismiss where the defendants were aware of the decedent's high suicide risk through
an evaluation that noted further steps needed to be taken to reduce his suicide risk and the
decedent told staff that he was hearing voices to kill himself); *cf. Scalia v. County of*
*Kern*, 308 F. Supp. 3d 1064, 1077 (E.D. Cal. 2018) (finding objective recklessness where
defendants did not assess a detainee for head trauma after the detainee fell five feet onto
concrete, hit her head, and was unable to walk after the fall).

Even if the jail staff did not intend for the plastic bag to be used to commit suicide,
it is plausible that the that Unknown Department Personnel did not take objectively
reasonable available measures to abate that risk.  The County argues that jail staff made
the deliberate decision to place Ortiz in the psychiatric unit, which demonstrates that jail
staff provided care for Ortiz's mental health needs.  *See* Doc. No. 3-1 at 16.  The
County's argument is unavailing at this stage of litigation.  "Providing some care is not
an absolute bar to a medical indifference claim, especially if the care provided could have
equally alerted Defendant to the existence of a substantial ongoing medical risk."
*Mendoza*, 2020 WL 2066142, at *6; *Deloney*, 2019 WL 1875588, at *8 ("While the
safety housing transfers were a step to abate the risk of suicide, more may have been
reasonably necessary to abate the risk.").

As to the fourth element, Plaintiff has plausibly alleged that the Unknown
Department Personnel caused Ortiz's injuries through providing a means to commit
suicide without proper supervision.  If jail staff did not provide Ortiz with the plastic bag
or did not leave him with the bag while insufficiently monitored, Ortiz would not have
been able to commit suicide through a means provided by the jail.

Therefore, the Court finds that Plaintiff has adequately pleaded sufficient facts to
show a deliberate indifference to Ortiz's serious medical needs under the Fourteenth
Amendment for the purpose of surviving a motion to dismiss.  Accordingly, the Court

1   **DENIES** the County's motion to dismiss Plaintiff's deliberate indifference claim.  *See*

2   *Deloney*, 2019 WL 1875588, at *7–8; *see also Wakefield*, 177 F.3d at 1163–65 (holding

3   that it was improper for the district court to dismiss the complaint against a doe defendant

4   because Plaintiff alleged sufficient facts to show deliberate indifference to medical

5   needs); *supra* Section III.A.1 (noting the limitation that this finding is examined through

6   the lens of determining whether the claims against the Unknown Department Personnel

7   could be dismissed on other grounds irrespective of doe defendant pleading).  This ruling

8   is without prejudice as to a named doe defendant challenging Plaintiff's claims through a

9   separate motion.

10   ### 3. *Monell* Liability – Second Cause of Action

11   Plaintiff's second cause of action is deliberate indifference to serious medical

12   needs and unconstitutional "*de facto* customs, practices, and polices" under *Monell* and

13   42 U.S.C. § 1983 against the County.  *See* Compl. ¶¶ 91–119.  Defendant County argues

14   Plaintiff has not alleged that the jail staff failed to share Ortiz's critical medical

15   information or that conducting cell checks twice every thirty minutes would have

16   prevented Ortiz's suicide, given that "suffocation could have occurred within just a few

17   minutes."  Doc. No. 3-1 at 17; *see also* Doc. No. 7 at 4–5.  The County further adds that

18   Plaintiff does not plead facts demonstrating that a failure to investigate, a failure to take

19   remedial action, or a cover up caused Ortiz's death.  *See* Doc. No. 3-1 at 17.  Moreover,

20   the County asserts Plaintiff does not show that "the County's [] final policymakers'

21   alleged failure to implement recommendations caused Decedent's death or was a

22   motivating force behind the alleged constitutional violations."  *Id.* at 17–18.  Rebutting

23   Plaintiff's proffered recommendations, reports, and incidents regarding other inmates, the

24   County argues that these do not establish that Ortiz's death "was based on a widespread

25   policy or custom regarding providing food in plastic bags or conducting cell checks more

26   frequently."  *Id.* at 18.  Thus, the County argues Plaintiff does not "show that a policy

27   was the motivating force that resulted in a constitutional violation that caused [Ortiz's]

28   death."  *Id.*

Plaintiff responds that the County's motion focuses on the causation element of her *Monell* claim and that she has "plausibly alleged that the County's systemic and conscious failure to address the high rate of suicides in its jails was a moving force in causing [Ortiz's] death." Doc. No. 6 at 14. Plaintiff points to the recommendations, reports, and incidents to show that the County was aware of the high suicide rate in jails, and County's *de facto* customs and policies "were a moving force in bringing about [Ortiz's] death." *See id.*[4]

### i. *Monell* Claims, Generally

Title 42 U.S.C. § 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Municipalities cannot be held vicariously liable under § 1983 for the actions of their employees. *Monell*, 436 U.S. at 691, 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

Under *Monell*, a local governmental entity may be liable for failing to act to preserve constitutional rights under § 1983 where the plaintiff can establish the following elements: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to

---

[4] The parties disagree on whether the County challenged Plaintiff's *Monell* claim regarding deliberate indifference to training needs. *Compare* Doc. No. 6 at 14 n.3, *with* Doc. No. 7 at 5 n.2. The Court finds that the County challenges this portion of Plaintiff's *Monell* claim because both the allegations of deliberate indifference to training needs and the *de facto* customs and policies have substantial overlap. *See, e.g.*, Compl. ¶ 98 (alleging that jail staff "needed training or re-training" regarding documentation of detainees' chronic disease statuses); *see also id.* ¶¶ 100, 108.

the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"  *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, v. Harris*, 489 U.S. 378, 389–91 (1989)).

As to the second element—the policy—municipal liability under § 1983 may be premised on several grounds: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate.  *See Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004); *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984-85 (9th Cir. 2002); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The custom or practice "must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'"  *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Trevino*, 99 F.3d at 918).  "[I]solated or sporadic incidents" are insufficient to meet this standard.  *Id.*  (quoting *Trevino*, 99 F.3d at 918) ("[I]t must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

Additionally, a municipality may be liable under § 1983 "where the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).  For a failure to train claim, Plaintiff must identify how the municipality's training was inadequate and that the inadequate training represents municipal policy.  *See id.*[5]

---

[5] The elements needed to prove a *Monell* claim for unlawful policies and inadequate training are similar. *Compare Oviatt By & Through Waugh*, 954 F.2d at 1474 (quoting *Harris*, 489 U.S. at 389–91) (unlawful policies), *with Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (inadequate training).

District courts have found that *Monell* allegations are sufficient for Rule 12(b)(6) purposes where the allegations "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the alleged deficiency was obvious and that the constitutional injury was likely to occur." *Soler v. County of San Diego*, No. 14-cv-2470-MMA (RBB), 2015 WL 13828659, at *4 (S.D. Cal. Mar. 19, 2015) (quoting *Lucas v. City of Visalia*, No. 1:09-cv-1015 AWI DLB, 2010 WL 1444667, at *4 (E.D. Cal. Apr. 12, 2010)).

### ii. Plaintiff's Allegations

Plaintiff alleges that Defendant County violated Ortiz's Fourteenth Amendment rights as a result of the County's and the Sheriff Department's

> (a) deliberate indifference to the training needs of jail staff, including corrections and medical staff; and (b) [] *de facto* customs, practices, and polices of (i) failing to coordinate and share critical medical information among jail staff; (ii) failing to conduct proper cell checks; (iii) failing to investigate misconduct, take appropriate remedial action, and covering up wrongdoing.

Compl. ¶ 94.  To support these allegations, Plaintiff points to a January 2017 report on the practices of the County's jails by the National Commission on Correctional Health Care; an April 2018 report on the "Suicides in San Diego County Jail: A System Failing People with Mental Illness" by Disability Rights California; and a June 2018 "Report on Suicide Prevention Practices within the San Diego County Jail System" by a project director with the National Center on Institutions and Alternatives.  *See id.* ¶¶ 39–51, 52–61, 62–72.  Plaintiff further relies on issues addressed by the 2015/2016, 2016/2017, and 2018/2019 San Diego County Grand Juries, such as the lack of a centralized database to collect investigation results and mental health issues in the County's jails.  *See id.* ¶¶ 74–76.  Finally, Plaintiff examines specific prior incidents that indicate "fail[ing] to coordinate and share critical medical information among personnel," "failing to conduct

proper cell checks," and "failing to investigate misconduct, take appropriate remedial action, and covering up wrongdoing." *Id.* ¶¶ 77–79.

### iii. Whether Plaintiff Pleads Causation Under *Monell*

Defendant County's motion focuses on the causation element: emphasizing that Plaintiff fails to show that a policy was the motivating force behind Ortiz's suicide or the constitutional violations. *See* Doc. No. 3-1 at 17–18; *see also* Doc. No. 7 at 4–5. Even if Plaintiff establishes a pattern of constitutional violations that provides the County notice that failing to implement certain polices or training protocols would lead to further constitutional violations, a mere pattern alone does not transform every suicide of a detainee in County's care into a constitutional violation. *See NeSmith v. County of San Diego*, No. 15-cv-629-JLS (JMA), 2016 WL 4729309, at *5 (S.D. Cal. Sept. 12, 2016). Plaintiff must further show that the lack of a policy or training protocol was the motivating force behind the specific incident. *See id.* To be a "motivating force" behind a plaintiff's injury, the "identified deficiency" in the county's policies or training "must be closely related to the ultimate injury." *Gibson v. County of Washoe*, 290 F.3d 1175, 1196 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d 1060 (quoting *Harris*, 489 U.S. at 391). The deficiency must actually cause the constitutional violation. *Harris*, 489 U.S. at 391. The Court turns to whether Plaintiff has plausibly alleged that each of the purported deficiencies was a motivating force behind Ortiz's suicide.

#### a. Deliberate Indifference to the Training Needs of Jail Staff

Plaintiff alleges that Ortiz's Fourteenth Amendment rights were violated as a result of deliberate indifference to jail staff's training needs. *See* Compl. ¶¶ 94, 97. Plaintiff specifies that the County and the Sheriff's Department "failed to maintain adequate and proper training necessary to educate deputies and medical staff as to the Constitutional rights of inmates to prevent the consistent and systemic failure to provide medical care, especially to those facing mental illness and suicidality." *Id.* ¶ 97. The recommendations, reports, and incidents noted by Plaintiff specifically pertain to the County's jails over the last several years. *See id.* ¶¶ 39–72. The problems found by

various San Diego Grand juries further detail the seriousness of suicide and the need for proper and updated suicide prevention polices within County jails. *See id.* ¶¶ 74–76.

Some of the incidents may be irrelevant for the purpose of showing inadequate training surrounding detainees with mental illness or suicidal ideations. However, the Court finds there is sufficient factual background that indicates a plausible absence of proper municipal response to detainees who have demonstrated mental illness or suicidal intent. Ortiz had "at least one documented suicide attempt," was being held in the psychiatric unit, was found in "his PSU cell with a mark around this neck indicating he had just tried to strangle himself" and with a noose made from a towel in his cell, and expressed suicidal ideations to jail staff. Compl. ¶¶ 23–24. The allegations reveal that Ortiz demonstrated the ability to fashion items for suicidal ends and expressed the desire to commit suicide. In light of this context, providing Ortiz with food in a plastic bag may plausibly indicate a lack of or indifference to proper training. Thus, the Court finds it further plausible that if the County had reacted to prior suicides within its jails by implementing training for jail staff working with detainees with mental illness, then Ortiz would not have been provided the means to commit suicide by jail staff. Accordingly, the Court finds that Plaintiff has properly alleged that the County's lack of adequate training was a motivating force behind the alleged constitutional violation for the purpose of defeating the County's motion to dismiss at this stage of the litigation. *See NeSmith*, 2016 WL 4729309, at *7.

### b. Failing to Coordinate and Share Critical Medical Information

Next, Plaintiff alleges three categories of *de facto* customs, policies, and practices resulting in constitutional violations. *See* Compl. ¶¶ 98–117. As to the first category, Plaintiff alleges that final policymakers for the County and Sheriff's Department were aware of improper documentation of detainees' mental illnesses and suicidality, the "Jail Information Management System" was out-of-date, and jail staff had inadequate training on the Jail Information Management System. *Id.* ¶ 98. Plaintiff emphasizes that "there

was a widespread pattern and long history of failure to communicate detainees/patients' critical medical history to other staff." *Id.* ¶ 99; *see also id.* ¶ 77.

As with the above failure to train allegation, the Court finds that jail staff providing Ortiz with a plastic bag may plausibly indicate a failure to communicate the nature of Ortiz's mental health problems.  The Court finds it plausible that if jail staff were aware of Ortiz's past suicidal ideations and actions and communicated that information to jail staff that came into contact with Ortiz, then jail staff would not have provided Ortiz the means to commit suicide.  The Court finds that the jail's practice is sufficiently and closely related to the underlying constitutional deprivation.  Accordingly, the Court finds that Plaintiff has properly alleged that communication problems regarding detainees' critical medical information was a motivating force behind the alleged constitutional violation for the purposes of surviving a Rule 12(b)(6) motion.

### c. Failing to Conduct Proper Cell Checks

As to the second category of *de facto* customs, policies, and practices, Plaintiff alleges that final policymakers for the County and Sheriff's Department "knew jail staff were conducting cell checks in a way that resulted in unnecessary harm and/or death to detainees." *Id.* ¶ 101.  This included knowledge that jail staff "lied in the past about conducting proper cell checks," had "insufficient time to conduct proper cell checks," and failed to monitor detainees with suicidal ideation.  *Id.* ¶¶ 102–104; *see also id.* ¶ 78.

For the purposes of defeating a motion to dismiss, the Court finds that the County's alleged failure to conduct proper cell checks is plausibly and sufficiently close to Ortiz's ultimate injury.  Given the provision of food in a plastic bag to a suicidal detainee and improper monitoring, the Court finds that improper cell checks could plausibly be a motivating force of Ortiz's injury.  Referring to the Hayes report as detailed in the Complaint, the County argues that Plaintiff does not allege that "implementation of the recommendation that cell checks be conducted 'at least twice every thirty (30) minute period' would have prevented [Ortiz's] suicide . . . [because] suffocation could have occurred within just a few minutes." Doc. No. 3-1 at 17 (quoting Compl. ¶ 66).

However, examining the allegations in the most favorable light to Plaintiff, the Court finds that it is plausible that the improper cell checks could have actually caused Ortiz's injury.  Whether improper cell checks indeed actually caused the alleged harm is an issue better suited for a summary judgment motion or trial when the factual record is further developed.  Accordingly, the Court finds that Plaintiff has provided sufficient facts to sustain her claim against the County's motion to dismiss.

### d. Failing to Investigate Misconduct, Take Appropriate Remedial Action, and Covering Up Wrongdoing

As to the third category of *de facto* customs, policies, and practices, Plaintiff alleges final policymakers for the County and Sheriff's Department had "a de facto policy of not properly investigating deaths of detainees in County jails."  Compl. ¶ 105. This included an inadequate system . . . to determine whether detainee deaths were the result of a constitutional violation, whether such deaths were preventable, and whether such deaths could be prevented in the future." *Id.*  These alleged shortcomings include waiting to report and investigate deaths; intimidating witnesses and improper witness questioning; retaining information from the deceased inmates' families; failing to properly fund, staff, and train the County's Citizens' Law Enforcement Review Board; and failing to "to set up a mechanism to review the conduct of medical providers and staff in the County jails." *Id.* ¶¶ 106–14; *see also id.* ¶ 79.

The Court finds that Plaintiff's alleged failures over investigation, remedial action, and cover ups are insufficient to show causation between the identified deficiency and Ortiz's ultimate injury.  Even if these deficiencies contributed to the ultimate injury, the *Monell* causation element requires more.  Plaintiff's allegations do not make it clear whether the injury would have been avoided if the County addressed these deficiencies. Absent a greater showing of a causal connection, the Court finds Plaintiff has failed to allege that the failures over investigation, remedial action, and cover ups were the motivating force behind the alleged constitutional violation.  *See Greer v. County of San Diego*, No. 3:19-cv-378-GPC (AGS), 2020 WL 1864640, at *5 (S.D. Cal. Apr. 14, 2020).

### iv. Conclusion

Accordingly, the Court **GRANTS in part and DENIES in part** the County's motion to dismiss Plaintiff's *Monell* claim.  The Court **DENIES** the County's motion to dismiss the *Monell* claim regarding the allegations of (1) deliberate indifference to training needs and (2) the *de facto* custom, policy, or practice of failing to coordinate and share critical medical information, and (3) the *de facto* custom, policy, or practice of failing to conduct proper cell checks.  However, the Court **GRANTS** the County's motion and **DISMISSES** the *Monell* claim with leave to amend regarding the *de facto* customs, policies, or practices of failing to investigate, failing to take remedial actions, and covering up wrongdoing.  *See Knappenberger*, 566 F.3d at 942 (quoting *Lopez*, 203 F.3d at 1127) (stating that leave to amend should be granted unless the pleading defect could not be cured by alleging additional facts); *Lucas*, 2010 WL 1444667, at *5 ("Since it is not clear that amendment would be futile, the Court will dismiss with leave to amend the *Monell* claim . . . .").

### 4. Violation of Substantive Due Process – Eighth Cause of Action

Plaintiff's eighth cause of action is violation of her Fourteenth Amendment right to familial companionship under 42 U.S.C. § 1983 against Unknown Department Personnel.  *See* Compl. ¶¶ 165–72.  Defendant County argues that Plaintiff has not shown "that the Currently Unknown Department Personnel did anything to deprive Plaintiff of her right to the companionship and society of her son that 'shocks the conscience' or would 'offend the community's sense of fair play and decency.'"  Doc. No. 3-1 at 27 (quoting *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011)); *see also* Doc. No. 7 at 11.  The County reiterates that Plaintiff has not shown deliberate indifference.  *See* Doc. No. 3-1 at 27.  Plaintiff responds she has alleged that Unknown Department Personnel's actions or omissions demonstrate their deliberate indifference to Ortiz's serious medical risks and needs "in the hours leading up to his suicide and that the extent of this deliberate indifference would 'shock the conscience' of reasonable members of the community."  Doc. No. 6 at 21.

The Due Process Clause of the Fourteenth Amendment protects against a state depriving "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The touchstone of due process is protection of the individual against arbitrary action of government . . . ." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).  Prisoners may seek protection under the Due Process Clause.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  "[T]he Due Process Clause of its own force requires that conditions of confinement satisfy certain minimal standards for pretrial detainees . . . ." *Collins v. City of Harker Heights*, 503 U.S. 115, 127 (1992); *see also Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *Jones v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (quoting *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987)) ("'The more protective fourteenth amendment standard applies to conditions of confinement when detainees . . . have not been convicted' of a crime.").  "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct."  *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citing *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010)).

To violate substantive due process, "the harmful conduct must 'shock [] the conscience' or 'offend the community's sense of fair play and decency.'" *Rosenbaum*, 663 F.3d at 1079 (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)); *see also Lewis*, 523 U.S. at 846–47 (quoting *Collins*, 503 U.S. at 128); *Lemire*, 726 F.3d at 1075 (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)).  The Ninth Circuit has held that the "shocks the conscience" standard is satisfied by showing that a state official (1) "acted with *deliberate indifference*" or (2) "acted with a *purpose to harm* . . . for reasons unrelated to legitimate law enforcement objectives."  *Porter*, 546 F.3d at 1137.

"A prison official's deliberately indifferent conduct will generally 'shock the conscience' *so as long as* the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner."  *Lemire*, 726 F.3d at 1075 (emphasis added); *see also Nicholson v. City of Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019) (stating that

1   whether "actual deliberation is practical" is the critical consideration); *Tennison v. City &*

2   *County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009) ("In determining whether

3   deliberate indifference is sufficient to shock the conscience, or whether the more

4   demanding standard of purpose to harm is required, 'the "critical consideration [is]

5   whether the circumstances are such that actual deliberation is practical."'"); *Lozano v.*

6   *County of Santa Clara*, No. 19-cv-2634-EMC, 2019 WL 6841215, at *12 (N.D. Cal. Dec.

7   16, 2019) (quoting *Prasad ex rel. Prasad v. County of Sutter*, 958 F. Supp. 2d 1101, 1116

8   (E.D. Cal. 2013) ("[A] prison official's deliberate indifference to a prisoner's serious

9   medical needs shocks the conscience and states a claim under the substantive due process

10  clause.").

11         Here, as addressed above, the Court has already found that Plaintiff pleads

12  sufficient facts to show a deliberate indifference to Ortiz's serious medical needs under

13  the Fourteenth Amendment.  *See supra* Section III.A.2.  Ortiz had a history of mental

14  illness and at least one documented previous suicide attempt before March 18, 2019

15  while detained in Central Jail.  Compl. ¶ 23; *see also id.* ¶ 166.  On March 18, 2019, and

16  before his suicide, Ortiz appears to have fashioned a noose and attempted to kill himself.

17  *Id.* ¶ 24; *see also id.* ¶ 166.  He subsequently "told jail staff he was 'feeling sad and

18  depressed,' and he felt like 'ending his life.'  He told jail staff he was hearing voices

19  telling him to hurt and/or kill himself."  *Id.* ¶ 24; *see also id.* ¶ 166.  Subsequently, jail

20  staff transferred Ortiz to a single-person cell and then provided him food in a plastic bag.

21  *Id.* ¶ 26.  These facts leading up to Ortiz's suicide plausibly demonstrate that Unknown

22  Department Personnel could have had time to actually deliberate.  Therefore, the Court

23  finds that Plaintiff pleads sufficient facts to sustain her substantive due process claim

24  under the Fourteenth Amendment for the purpose of surviving a motion to dismiss.

25         Accordingly, the Court **DENIES** the County's motion to dismiss Plaintiff's

26  substantive due process claim.  *See Villarreal v. County of Monterey*, 254 F. Supp. 3d

27  1168, 1184, 1186 (N.D. Cal. 2017); *Pajas v. County of Monterey*, No. 16-cv-00945-LHK,

28  2016 WL 3648686, at *11 (N.D. Cal. July 8, 2016); *Estate of Victorianne v. County of*

*San Diego*, No. 14-cv-2170-WQH (BLM), 2016 WL 411292, at *22 (S.D. Cal. Feb. 3, 2016); *see also* Section III.A.1 (noting the limitation that this finding is examined through the lens of determining whether the claims against the Unknown Department Personnel could be dismissed on other grounds irrespective of doe defendant pleading). This ruling is without prejudice as to a named doe defendant challenging Plaintiff's claims through a separate motion.

**B. ADA – Third Cause of Action**

Plaintiff's third cause of action is violation of the ADA against Unknown Department Personnel and the County. *See* Compl. ¶¶ 120–25. Defendant County argues Plaintiff's ADA claim should be dismissed because she "allege[s] inadequate treatment for a disability rather than discrimination on the basis of a disability." Doc. No. 3-1 at 18; *see also* Doc. No. 7 at 5–7. The County asserts that Plaintiff fails to allege that Unknown Department Personal and the County refused to provide "accommodations *because of ('by reason of')* [Ortiz's] disability or to discriminate against [Ortiz]." Doc. No. 3-1. at 19. Plaintiff responds that the County's argument does not apply to situations where inmates with serious mental health impairments are placed in isolated cells because of their mental illness and where Defendants do not execute practices that reduce the risks of administrative segregation. *See* Doc. No. 6 at 15.

Title II of the ADA states "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA bars public entities from both discriminating against disabled persons and "*excluding* the disabled from participating in *or* benefitting from a public program, activity, or service 'solely by reason of disability.'" *Lee*, 250 F.3d at 690–91 (quoting *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978–79 (9th Cir. 1997)). A plaintiff alleging a violation of Title II of the ADA must show the following: "(1) [plaintiff] is a qualified individual with a disability; (2) [plaintiff] was excluded from

participation in or otherwise discriminated against with regard to a public entity's

services, programs, or activities, and (3) such exclusion or discrimination was by reason

of [plaintiff's] disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *see

also* 42 U.S.C. § 12132.  To show intentional discrimination under the ADA, "the

plaintiff [must] show that a defendant acted with 'deliberate indifference,' which requires

'both knowledge that a harm to a federally protected right is substantially likely, and a

failure to act upon that . . . likelihood.'" *Updike v. Multnomah County*, 870 F.3d 939,

950–51 (9th Cir. 2017) (quoting *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th

Cir. 2001)).  A decedent's ADA claim survives to the extent that its purpose is remedial.

*See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1056–57 (9th Cir. 2018).

The ADA applies to a jail's "services, programs, and activities for detainees."

*Pierce v. County of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008).  The Ninth Circuit has

noted that "[t]he ADA prohibits discrimination because of disability, not inadequate

treatment for disability," *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir.

2010), *overruled on other grounds in Castro*, 833 F.3d at 1070, *and Gordon*, 888 F.3d at

1124–25; *see also Marlor v. Madison County*, 50 F. App'x 872, 873 (9th Cir. 2002)

(unpublished) ("Inadequate medical care does not provide a basis for an ADA claim

unless medical services are withheld *by reason of* a disability."); *Arreola v. California

Dep't of Corr. & Rehab.*, No. 16-cv-3133-JD, 2017 WL 1196802, at *2 (N.D. Cal. Mar.

31, 2017) ("Simply alleging a need for services is not enough.  [Plaintiff] must plausibly

allege that he was denied benefits or programs, or discriminated against, because of a

disability."); *Rosado v. Alameida*, No. Civ.03CV1110J (LSP), 2005 WL 892120, at *3

(S.D. Cal. Feb. 8, 2005) (finding that the plaintiff failed to state a claim where the

medical services the plaintiff sought to treat his cirrhosis and hepatitis C were *for* his

disability and he was not denied the services *because he had* a disability).

However, "[a] correctional facility's '*deliberate refusal*' to accommodate

plaintiff's disability-related needs violates the ADA . . . ." *Atayde v. Napa State Hosp.*,

255 F. Supp. 3d 978, 1001 (E.D. Cal. 2017) (emphasis added); *see also United States v.*

*Georgia*, 546 U.S. 151, 157 (2006) ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiff's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'" (quoting 42 U.S.C. § 12132)).  "The ADA may be violated where there is an '*outright denial of medical services*' because the complete lack of access to services may be 'so unreasonable as to demonstrate that they were discriminating against [plaintiff] because of his disability.'"  *Anderson v. County of Siskiyou*, No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D. Cal. Sept. 13, 2010) (emphasis added) (quoting *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006)) (finding that the plaintiff provided sufficient allegations to sustain an ADA claim where the defendants did not provide the decedent with any access to mental health resources and failed to accommodate his mental disabilities); *see also Atayde*, 255 F. Supp. 3d at 1004 (finding that the plaintiff provided sufficient allegations to sustain an ADA claim where the defendants deprived the plaintiff of all mental health services, and did so in defiance of a court order).

Plaintiff alleges that "Defendants failed to provide reasonable accommodations to [Ortiz] to avoid discrimination against [Ortiz] on the basis of his actual and/or perceived disability."  Compl. ¶ 123.  Specifically, Plaintiff claims that Defendants did not provide the following accommodations:

> (a) implementing and carrying out a chronic-disease protocol for severely mentally ill/suicidal detainees; (b) providing suicide-prevention training to jail staff, (c) providing [Ortiz] and other actively suicidal detainees with prompt access to a mental-health provider, (d) diligently monitoring [Ortiz] and other mentally ill/suicidal detainees, and (e) ensuring [Ortiz] and other suicidal detainees did not have the means (e.g., a plastic bag) to attempt suicide.

*Id.*

1   Here, Plaintiff meets the disability element.  Under the ADA, "disability" includes

2   mental impairments.  *See* 42 U.S.C. § 12102(1)–(2).  Plaintiff alleges that Defendants had

3   knowledge that Ortiz "was diagnosed with schizophrenia, had a history of suicidality, and

4   was actively suicidal."  Compl. ¶ 122.  Therefore, the Court finds that Ortiz was a

5   qualified individual with a disability.

6   As to the second and third elements, the Court finds even if Plaintiff shows

7   discrimination or exclusion, Plaintiff has not alleged that the discrimination was *by*

8   *reason of* the disability.  Although inadequate treatment is insufficient to sustain an ADA

9   claim, extreme inadequate treatment that amounts to a deliberate denial or outright

10   refusal to accommodate a plaintiff's disability-related needs or to provide medical

11   services solely by reason of the disability may sustain an ADA claim.  *Compare*

12   *Simmons*, 609 F.3d at 1022, *and Arreola*, 2017 WL 1196802, at *2, *with Atayde*, 255 F.

13   Supp. 3d at 1001–04, *and Anderson*, 2010 WL 3619821, at *5.  Despite the fact that the

14   Court has already made a finding of deliberate indifference, *see supra* Section III.A.2,

15   which satisfies a showing of intentional discrimination under the ADA, Plaintiff does not

16   show that the discrimination was "by reason of such disability."  42 U.S.C. § 12132;

17   *Lovell*, 303 F.3d at 1052.  The statute's plain language still requires that the exclusion or

18   discrimination at issue be "by reason of such disability."  42 U.S.C. § 12132.  Thus, the

19   Court requires further facts indicating that Defendants' refusal to provide Ortiz with

20   mental health services was by reason of his mental disability.  Without more, Plaintiff's

21   ADA claim focuses on how Ortiz's disability treatment was deficient, which does not

22   amount to a complete denial of service based upon his disability.  *See Germaine-McIver*

23   *v. County of Orange*, No. SACV 16-1201-CJC (GJSx), 2018 WL 6258896, at *14 (C.D.

24   Cal. Oct. 31, 2018).

25   Unlike the allegations in *Atayde* and *Anderson* that successfully defeated motions

26   to dismiss, Plaintiff here has not provided the Court with sufficient background that

27   shows the full context of medical services Ortiz received—or failed to receive—during

28   his detainment from June 9, 2018 through the March 18, 2019.  With the exception of

noting that "prior to March 18, 2019, [Ortiz] had at least one documented suicide attempt while in County custody at Central Jail," Compl. ¶ 23, Plaintiff's allegations focus on the events of one day: March 18, 2019.  Even the prior incident lacks sufficient details beyond the mere fact that it occurred and was documented.  Plaintiff does not provide further details of any care requested, ordered, received, or denied.  As currently pleaded, Defendants' actions over the course of one day fail to demonstrate a deliberate denial or outright refusal to accommodate Ortiz's mental health-related needs by reason of his disability.

Plaintiff's ADA claim does not sufficiently allege that Defendants excluded or discriminated against Ortiz solely by reason of his disability.  Accordingly, the Court **GRANTS** the County's motion and **DISMISSES** Plaintiff's ADA claim with leave to amend.  *See Arreola*, 2017 WL 1196802, at *3.

**C. Violation of the Unruh Act – Fourth Cause of Action**

Plaintiff's fourth cause of action is violation of the Unruh Act against Unknown Department Personnel and the County.  *See* Compl. ¶¶ 126–32.  Defendant County argues that Plaintiff's Unruh Act claim should be dismissed because a jail is not a business establishment and Ortiz's disability was not a "'motivating factor' for any denial of accommodations, advantages, facilities, privileges, or services." Doc. No. 3-1 at 20; *see also* Doc. No. 7 at 7.  Plaintiff responds that her claim "remains viable to the extent that it is alleged against private contractors, hired by the County to perform services within the jails." Doc. No. 6 at 16–17.  As to the "motivating factor" argument, Plaintiff reasserts her previous ADA argument.  *See id.* at 16.

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability[ or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. The Unruh Act "firmly established the right of all persons to nondiscriminatory treatment by establishments that engage in business transactions with the public." *Anderson*, 2010

WL 3619821, at *6 (quoting *Warfield v. Peninsula Golf & Country Club*, 896 P.2d 776, 790 (Cal. 1995)).  A plaintiff alleging a violation of the Unruh Act must show the following:

> (1) [plaintiff] was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) [plaintiff's] disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm.

*Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1048 (N.D. Cal. 2012) (quoting *Johnson v. Beahm*, No. 2:11-cv-294-MCE-JFM, 2011 WL 5508893, at *4 (E.D. Cal. Nov. 8, 2011)).

Here, Plaintiff alleges similar accommodation shortfalls as stated in her ADA claim.  *See* Compl. ¶¶ 123, 129.  Plaintiff alleges that Defendants failed to provide these accommodations to Ortiz during his detainment in Central Jail.  *See id.* ¶¶ 22, 129. A county jail is not a "business establishment" that falls under the Unruh Act.  *Shaymus v. Tulare County.*, No. 1:14-cv-1633-MCE, 2015 WL 3466942, at *8 (E.D. Cal. June 1, 2015); *Estate of Bock ex rel. Bock v. County of Sutter*, No. 2:11-cv-536-MCE, 2012 WL 423704, at *10 (E.D. Cal. Feb. 8, 2012); *Anderson*, 2010 WL 3619821, at *6; *Taormina v. California Dep't of Corr.*, 946 F. Supp. 829, 834 (S.D. Cal. 1996).  "To conclude that a jail is governed by the Unruh Act, notwithstanding the fact that it lacks the attributes of a business, would amount to an impermissible expansion of the statute."  *Anderson*, 2010 WL 3619821, at *6.  Despite Plaintiff arguing that the "claim remains viable to the extent that it is alleged against private contractors," Doc. No. 6 at 17, Plaintiff has not made any allegation against a private contractor beyond speculation.  Even if she had made allegations against a private contractor, her claim fails because the alleged violations occurred at "San Diego County Central Jail," Compl. ¶¶ 1, 22, and county jails are not business establishments under the Unruh Act, *Anderson*, 2010 WL 3619821, at *6.

Accordingly, because Plaintiff cannot cure this deficiency, the Court **GRANTS** the County's motion and **DISMISSES** Plaintiff's Unruh Act claim **without leave to amend**. *See Shaymus*, 2015 WL 3466942, at \*8; *Anderson*, 2010 WL 3619821, at \*6.

**D. Violation of CDPA – Fifth Cause of Action**

Plaintiff's fifth cause of action is violation of the CDPA against Unknown Department Personnel and the County.  *See* Compl. ¶¶ 133–39.  Defendant County argues that Plaintiff's CDPA claim fails to show that Defendants denied Ortiz "full and free use of any street, highway, sidewalk, walkway, public building, or medical facility." Doc. No. 3-1 at 22; *see also* Doc. No. 7 at 8–9.  Even if Plaintiff adequately pleads her CDPA claim, the County further argues that Plaintiff is not entitled to monetary damages from the County.  *See* Doc. No. 3-1 at 23.  Plaintiff responds she pleads an adequate CDPA claim for the same reasons that she also states her ADA claim.  *See* Doc. No. 6 at 17.  Plaintiff also asserts that County can be held vicariously liable.  *See id.* at 18.

The CDPA provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, . . . public facilities, and other public places."  Cal. Civ. Code § 54(a).  The CDPA further states the following:

> Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, medical facilities, . . . and privileges of all common carriers . . . or any other public conveyances or modes of transportation . . . , telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement, or resort, and other places to which the general public is invited . . . .

Cal. Civ. Code § 54.1(a)(1).  The California Legislature intended the CDPA "to strengthen California law in areas where it is weaker than the [ADA] and to retain California law when it provides more protection for individuals with disabilities than the [ADA]." *Wilkins-Jones v. County of Alameda*, No. C 08-1485 MHP, 2010 WL 4780291,

29

at *10 (N.D. Cal. Nov. 16, 2010) (quoting Assemb. B. No. 1077, 1992 Stats., ch. 913, § 1, p. 4282 (Cal. 1992)); *see also* Cal. Civ. Code § 54(c) (stating that a violation of the ADA also violates the CDPA); *Gatto v. City of Sonoma*, 120 Cal. Rptr. 2d 550, 560 (Ct. App. 2002) (restating the legislative intent behind the CDPA).

"Given that the Legislature intended for the CDPA to provide at least the ADA's protections, it would be incongruous to this legislative intent to conclude that the CDPA provides less protection to correctional facilities than the ADA." *Wilkins-Jones*, 2010 WL 4780291, at *10. Therefore, because the ADA applies to correctional facilities, *see Pierce*, 526 F.3d at 1214, the Court finds that the CDPA also applies to correctional facilities. *See Wilkins-Jones*, 2010 WL 4780291, at *10, *adopted and reaffirmed by Wilkins-Jones*, 859 F. Supp. 2d at 1054; *see also Hernandez v. County of Monterey*, 70 F. Supp. 3d 963, 973 (N.D. Cal. 2014) (stating that the CDPA applies to jails).

However, the CDPA "only guarantees *physical access* to a facility." *Anderson*, 2010 WL 3619821, at *6 (emphasis added); *see also Eller v. City of Santa Rosa*, No. C09-01094 TEH, 2009 WL 3517610, at *4 (N.D. Cal. Oct. 23, 2009) (stating that the CDPA does not protect anything more than physical access); *Turner v. Ass'n of Am. Med. Colleges*, 85 Cal. Rptr. 3d 94, 104 (Ct. App. 2008) (concluding that the CDPA did not require testing accommodations for individuals with learning disabilities and attention deficit hyperactivity disorder, "except to the extent necessary to guarantee physical access to the place in which the test is administered"); *Madden v. Del Taco, Inc.*, 58 Cal. Rptr. 3d 313, 318 (Ct. App. 2007) (stating that the California Legislature intended to eliminate "physical impediments," such as architectural barriers). Furthermore, despite the CDPA incorporating the ADA, the CDPA "only incorporates those provisions of the ADA that relate to physical access to public places." *See Lopez v. County of Tulare*, No. CV-F-11-1547-LJO-BAM, 2012 WL 33244, at *10 (E.D. Cal. Jan. 6, 2012). A plaintiff cannot rely upon allegations of denied services—as opposed to denied physical access—to sustain a CDPA cause of action. *Wilkins-Jones*, 859 F. Supp. 2d at 1054.

Here, Plaintiff alleges similar accommodation shortfalls as in her ADA and Unruh Act claims. *See* Compl. ¶¶ 123, 129, 136. Settled case law indicates that the CDPA protects disabled individuals against physical impediments to public places. Plaintiff's CDPA claim fails to allege that Ortiz faced a physical barrier to access areas within the jail that that he would otherwise be entitled access. Instead, Plaintiff's CDPA claim centers on accommodations for medical care, training, and monitoring for an individual with a mental disability. *See id.* ¶ 136. These allegations amount to a denial of services, not a denial of physical access, and thus are not actionable under the CDPA. *See Wilkins-Jones*, 859 F. Supp. 2d at 1054. Indeed, because Ortiz was being held in the jail's PSU— and later in a single-person cell—it currently does not appear that he would be provided physical access to other parts of the jail or, if he were permitted access, that the jail had physical impediments that would bar his access.

Accordingly, because Plaintiff does not allege any such physical barrier, the Court **GRANTS** the County's motion and **DISMISSES** Plaintiff's CDPA claim with leave to amend. *See Lopez*, 2012 WL 33244, at *10 (dismissing a plaintiff's CDPA claim alleging that the decedent was detained in a cell without suicide precautions but did not allege denial of physical access within the jail).

**E. Negligence and Wrongful Death – Sixth and Ninth Causes of Action**

Plaintiff's sixth and ninth causes of action are negligence and wrongful death against all Defendants. *See* Compl. ¶¶ 140–57, 173–76. Defendant County argues that Plaintiff's negligence and wrongful death claims against it should be dismissed because the County has statutory immunity under California Government Code §§ 815, 844.6, and 845.6. *See* Doc. No. 3-1 at 24; *see also* Doc. No. 7 at 9. The County asserts that its immunity extends to Plaintiff's medical negligence allegations. *See* Doc. No. 3-1 at 24. Also seeking dismissal, individual Defendants rely upon statutory immunity. *See* Doc. No. 13-1 at 5; Doc. No. 16-1 at 5; *see also* Doc. No. 19 at 2–4; Doc. No. 22 at 2–5. They further argue that Patron cannot be liable because Plaintiff only alleges that Patron confronted and interrogated Plaintiff after Ortiz's death. *See* Doc. No. 13-1 at 5.

Individual Defendants assert that they have immunity because Plaintiff fails to allege that they were "aware of [Ortiz's] presence at the jail prior to his death" or that they directed or participated in the acts that lead to Ortiz's death. *Id.* at 6. Individual Defendants further state that Gore, Frierson, and Lee cannot be liable for negligence or wrongful death based on their supervisory positions. *See id.*; Doc. No. 16-1 at 6.

Plaintiff responds that the County may be held directly liable under California Government Code §§ 844.6 and 845.6 "because the Currently Unknown Department Personnel, individuals working within the scope of their employment by the County, failed to obtain or furnish any medical care to [Ortiz] when he needed it the most, including the several hours leading up to his suicide." Doc. No. 6 at 18. Plaintiff emphasizes that she has alleged more than mere medical malpractice or negligence in light of Defendants' deliberate indifference to Ortiz's serious medical risks. *Id.* at 19. In response to the individual Defendants' motions, Plaintiff states that Defendants may be liable "notwithstanding . . . [§] 845.6," because they were "aware of an immediate need to implement recommendations that would quell the number of suicides in County jails, and they failed to implement any of the measures that would have saved [Ortiz's] life." Doc. No. 15 at 7; Doc. No. 21 at 6.[6] In particular, Plaintiff argues that Gore, Frierson and

---

[6] In a footnote, individual Defendants also argue that "Plaintiff's claims against [Gore, Frierson, Patron, and Lee] are likewise precluded by California Government Code section 855.6." Doc. No. 13-1 at 6 n.2; Doc. No. 16-1 at 5 n.2. Section 855.6 provides that

> Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.

Cal. Gov't Code § 855.6. Plaintiff responds to this argument in her opposition to Lee's motion to dismiss. *See* Doc. No. 21 at 6 n.2. Plaintiff states that "[s]ection 855.6 does not apply, however, because Plaintiff has not alleged that a 'failure to make a physical or mental examination' was the cause of Plaintiff's death, especially with regard to [Lee]." *Id.* Instead, Plaintiff argues that "[Lee] had a duty to implement concrete, systemic measures that would have prevented [Ortiz's] death, and she breached

Lee were "responsible for taking immediate action, including implementing any number of the recommendations put forward by oversight organizations to prevent further unnecessary deaths in County jails" but ultimately failed to take action.  Doc. No. 15 at 8; Doc. No. 21 at 7.

Under California law, the elements of a negligence claim are "(1) defendant had a duty to use care, (2) defendant breached that duty, and (3) the breach of duty was the proximate or legal cause of the resulting injury." *Deloney*, 2019 WL 1875588, at *9 (citing *Hayes v. County of San Diego*, 305 P.3d 252, 255 (Cal. 2013)).  "The elements of a California wrongful death claim are '(1) a "wrongful act or neglect" on the part of one or more persons that (2) "cause[s]" (3) the "death of [another] person."'" *Estate of Prasad ex rel. Prasad*, 958 F. Supp. 2d at 1118 (quoting *Norgart v. Upjohn Co.*, 981 P.2d 79, 83 (Cal. 1999)); *see also* Cal. Civ. Proc. Code § 377.60.  "A wrongful death claim may be predicated on negligence or other tortious conduct," including deliberative indifference to serious medical needs.  *Estate of Prasad ex rel. Prasad*, 958 F. Supp. 2d at 1118; *see also Pajas*, 2016 WL 3648686, at *16.

Under the California Government Code, "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov't Code § 815(a).  Section 844.6 contains an immunity provision applicable to correctional facilities: "Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code, a public entity is not liable for . . . [a]n injury to any prisoner."  *Id.* § 844.6(a)(2).  Section 845.6 provides an exception to § 844.6's general immunity provision.  *See id.* § 845.6.  A public entity or a public employee is not

---

this duty, causing grievous harm." *Id.*  Because Plaintiff does not allege that failure to make a physical or mental evaluation caused Ortiz's death, the Court declines to address whether Defendants lose immunity under § 855.6.

liable for injuries caused by an employee's failure "to furnish or obtain medical care" for a prisoner; however, except as detailed in sections 855.8 and 856,

> [p]ublic entities and public employees are liable for injuries proximately caused to prisoners where: (1) "the employee is acting within the scope of his [or her] employment," (2) "the employee knows or has reason to know that the prisoner is in need of immediate medical care," and (3) "he [or she] fails to take reasonable action to summon such medical care."

*Resendiz v. County of Monterey*, No. 14-cv-05495-LHK, 2015 WL 3988495, at *6 (N.D. Cal. June 30, 2015) (quoting Cal. Gov't Code § 845.6). In applying § 845.6,

> California courts have held that failure to provide necessary medication or treatment cannot be characterized as a failure to summon medical care claim, nor does the duty to summon immediate medical care pursuant to § 845.6 encompass a duty to assure that medical staff properly diagnose and treat the condition or a duty to monitor the quality of care provided.

*Id.* (citation omitted) (first citing *Nelson v. State*, 188 Cal. Rptr. 479, 485 (Ct. App. 1982); and then citing *Watson v. State*, 26 Cal. Rptr. 2d 262, 265–66 (Ct. App. 1993)); *see also Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1197 (E.D. Cal. 2018) ("Under California law, 'once an inmate is receiving medical care, § 845.6 does not create a duty to provide adequate or appropriate care.'"); *Castaneda v. Dep't of Corr. & Rehab.*, 151 Cal. Rptr. 3d 648, 666 (Ct. App. 2013). "Plaintiffs may bring a claim for negligence against the County to the extent the negligence claim is based upon a violation of [s]ection 845.6 for failure to summon medical care." *Pajas*, 2016 WL 3648686, at *17.

Although Plaintiff may bring a negligence claim as a vehicle to allege a violation of § 845.6, the Court must first find that her negligence claim is based upon a failure to summon immediate medical care. *See id.* Thus, even if Plaintiff's § 1983 claims could form the basis for Plaintiff's negligence and wrongful death claims, *Deloney*, 2019 WL

34

1  1875588, at *10; *see also Lemire*, 726 F.3d at 1081–82 (stating that deliberative

2  indifference requires much more than mere indifference, negligence, medical

3  malpractice, or gross negligence); *Villarreal*, 254 F. Supp. 3d at 1191 (finding that a

4  sufficient § 1983 allegation can form the basis of a claim for wrongful death or

5  negligence), the Court must still address (1) whether Defendants have immunity and (2)

6  whether Defendants lose immunity under § 845.6.  As to the first inquiry, the Court finds

7  that §§ 815 and 844.6 provide Defendants immunity unless an applicable statutory

8  provision provides an immunity exception.  As to the second inquiry, Defendants can be

9  held liable if (1) an employee was acting within the scope of her or his employment, (2)

10  the employee knows or had reason to know that Ortiz needed immediate medical care,

11  and (3) the employee failed to take reasonable action to summon medical care.  *See* Cal.

12  Gov't Code § 845.6; *Resendiz*, 2015 WL 3988495, at *6.

13  **1. Defendant County**

14  Jail staff found Ortiz in his cell the morning of March 18, 2019, Compl. ¶ 24,

15  which suggests that jail staff were working in the scope of their employment in

16  monitoring inmates.  Jail staff found Ortiz in his cell with a strangulation mark around his

17  neck and "a noose made from a towel" in his cell.  *Id.*  Ortiz told jail staff that "he was

18  'feeling sad and depressed,' and he felt like 'ending his life.'"  *Id.*  He also told jail staff

19  that "he was hearing voices telling him to hurt and/or kill himself."  *Id.*  The Court finds

20  that these allegations sufficiently demonstrate that the unnamed jail staff had actual or

21  constructive knowledge that Ortiz needed immediate medical care.

22  However, at this point, Ortiz was already under psychiatric care because the

23  County was holding him in the "Psychiatric Stabilization Unit" and jail staff subsequently

24  moved Ortiz "to a single-person observation cell within the PSU that was equipped with

25  video cameras that allowed jail staff to continuously monitor the cell."  Compl. ¶¶ 23–25.

26  "Section 845.6 is very narrowly written" to remove immunity where an entity or its

27  employees fail to summon immediate medical care.  *Resendiz*, 2015 WL 3988495, at *4

28  (quoting *Castaneda*, 151 Cal. Rptr. 3d at 663).  Moreover, "this obligation to help does

not extend to 'furnishing, monitoring, follow-up, or subsequent care for the same condition' for which care was originally summoned." *Estate of Prasad ex rel. Prasad*, 958 F. Supp. 2d at 1117 (quoting *Castaneda*, 151 Cal. Rptr. 3d at 666); *see also Germaine-McIver*, 2018 WL 6258896, at *17 (finding that § 845.6 did not impose a duty to monitor the quality of care where the decedent had a "persisting suicidal state" and was under psychiatric care when he committed suicide and remained housed in "the designated housing for mentally ill inmates"). Because Plaintiff pleads that Ortiz was already under psychiatric care after demonstrating suicidal intent the morning of March 18, *see* Compl. ¶¶ 23–25, § 845.6 does not extend to remove the County's statutory immunity for the subsequent suicide. Therefore, the Court finds that Plaintiff fails to sustain her negligence and wrongful death causes of action because she does not overcome the County's statutory immunity.[7]

## 2. Individual Defendants

Plaintiff's negligence and wrongful death claims against individual Defendants fail for the same reasons her claims against the County fail. *See supra* Section III.E.1. Relatedly, Plaintiff fails to allege that Gore, Frierson, Patron, Lee knew or had reason to know that Ortiz specifically needed immediate medical care or that they individually failed to take reasonable action to summon immediate medical care. The claims also fail for failure to allege a special relationship between the individual Defendants and Ortiz, as detailed below. *See infra* Section III.F. Moreover, as to Patron, Plaintiff's only allegations against Patron pertain to events at the hospital after Ortiz's death. *See* Compl. ¶¶ 37–38. Thus, Plaintiff fails to allege any facts that indicate that Patron contributed to

---

[7] As with Plaintiff's negligence claim, her wrongful death claim similarly fails because "wrongful death actions are generally subject to the immunity stated in section 844.6." *May v. County of Monterey*, 189 Cal. Rptr. 63, 65 (Ct. App. 1983).

Ortiz's death.[8]  Therefore, Plaintiff fails to plead sufficient facts to sustain her negligence and wrongful death claims against individual Defendants Gore, Frierson, Patron, and Lee.

### 3. Conclusion

Accordingly, the Court **GRANTS** the County's and individual Defendants' motions and **DISMISSES** Plaintiff's negligence and wrongful death claims with leave to amend.  *See Pajas*, 2016 WL 3648686, at *16–17.

## F. Negligent Hiring, Retention, and Supervision – Seventh Cause of Action

Plaintiff's seventh cause of action is negligent hiring, retention, and supervision against Gore, Frierson, Chief Medical Officer, Lee, Unknown Department Personnel, and the County.  *See* Compl. ¶¶ 158–64.  Defendant County argues this claim "is an attempt to collapse a *Monell* claim into *respondeat superior* liability" against the County.  Doc. No. 3-1 at 25; *see also* Doc. No. 7 at 10.  As to the claims against Defendants Gore, Frierson, Chief Medical Officer, Lee, and Unknown Department Personnel, the County argues that Plaintiff fails to plead facts to support her allegations and, specifically, fails to allege a causal connection between the Defendants' conduct, Plaintiff's alleged claim, and Ortiz's death.  *See* Doc. No. 3-1 at 26; Doc. No. 7 at 10.  Also seeking dismissal, individual defendants argue that Plaintiff fails to allege that Gore, Frierson, or Lee had a special relationship with Ortiz.  *See* Doc. No. 13-1 at 7; Doc. No. 16-1 at 6; *see also* Doc. No. 19 at 4–6; Doc. No. 22 at 5–7.  Individual Defendants further assert that Plaintiff's claim does not show facts that they should have known their subordinates were unfit or that Gore, Frierson, or Lee "had any personal involvement in the hiring, retention, and supervision of employees."  Doc. No. 13-1 at 8; Doc. No. 16-1 at 8.

Plaintiff responds that the County's vicarious liability brought under California law "has nothing to do with the County's direct liability under federal [§ 1983 or *Monell*] principles."  Doc. No. 6 at 19.  Plaintiff adds that the County does not point to state

---

[8] Indeed, Plaintiff concedes that "Plaintiff does not object to the dismissal of the wrongful death claim (without prejudice) as pled against Defendant Patron only."  Doc. No. 15 at 8.

authority that confers immunity from vicarious liability for negligent supervision. *Id.* at 19–20. Rebutting the County's argument regarding the sufficiency of her allegations, Plaintiff asserts that the individual Defendants were "managers/supervisors responsible for the Currently Unknown Department Personnel who interacted with [Ortiz]" and were aware of the jail's shortcomings that contributed to Ortiz's suicide. *Id.* at 20. In response to the individual Defendants' motions, Plaintiff states that this claim and her negligence claim "overlap because these claims are both based on [Gore's, Frierson's, and Lee's] negligent failure to respond, in a reasonable way, to the epidemic of suicides in County jails leading up to [Ortiz's] death." Doc. No. 15 at 8; Doc. No. 21 at 8. Plaintiff further argues that Defendants' custody of Ortiz creates a special relationship. *See* Doc. No. 15 at 8–9; Doc. No. 21 at 8.

Generally, a plaintiff may assert a negligent hiring and supervision claim directly against a governmental entity only when the claim is based on "the breach of a statutorily imposed duty owed by the entity to the inured party." *J. M. M. v. County of Los Angeles*, No. LA CV14-6529 JAK (FFMx), 2016 WL 11002595, at *28 (C.D. Cal. Oct. 3, 2016) (quoting *de Villers v. County of San Diego*, 67 Cal. Rptr. 3d 253, 266 (Ct. App. 2007)); *see also* Cal. Gov't Code § 815(a). As noted above, § 845.6 explicitly places liability on "a public employee[] and the public entity where the employee is acting within the scope of his employment" for the failure to take reasonable action to summon medical care. Cal. Gov't Code § 845.6. As noted by several district courts, "[p]rison officials may also be liable for negligent supervision and training as to the prompt summoning of medical care." *Greer*, 2020 WL 1864640, at *7; *see also Resendiz*, 2015 WL 3988495, at *8 (finding that the plaintiffs' negligent supervision, training, hiring, and retention claims are viable under § 845.6 "to the extent Plaintiffs' claims are based on Defendants' alleged negligence in supervising and training their employees regarding the furnishing of medical care"); *Estate of Claypole v. County of San Mateo*, No. 14-cv-2730-BLF, 2014 WL 5100696, at *8 (N.D. Cal. Oct. 9, 2014) (finding that the plaintiff's claim for negligent supervision, training, hiring, and retention were viable to the extent a claim is

based on negligence in supervising and training its employees in summoning immediate medical care under § 845.6); *Bock v. County of Sutter*, No. 2:11-cv-536-MCE, 2012 WL 3778953, at *18 (E.D. Cal. Aug. 31, 2012) (denying a motion to dismiss the plaintiffs' negligent supervision claim as it pertained to § 845.6).

Here, Plaintiff's allegations fail to sustain a negligence or wrongful death cause of action because she does not overcome the Defendants' statutory immunity. *See supra* Section III.E. Thus, Plaintiff's negligent hiring, retention, and supervision claim premised under § 845.6 against Defendants also fails. *See Resendiz*, 2015 WL 3988495, at *8–9.

Separate from liability under § 845.6, Plaintiff also fails to allege a special relationship between the Defendants and Ortiz necessary to sustain individual liability or vicarious liability of the County under § 815.2. Section 815.2(a) states that

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Cal. Gov't Code § 815.2(a). The California Supreme Court has found that "[a]bsent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability under section 815.2." *C.A. v. William S. Hart Union High Sch. Dist.*, 270 P.3d 699, 709 (Cal. 2012); *see also Estate of Osuna v. County of Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019); *Estate of Alejandro Sanchez v. County of Stanislaus*, No. 1:18-cv-977-DAD-BAM, 2019 WL 1745868, at *11 (E.D. Cal. Apr. 18, 2019). Plaintiff generally alleges that "Gore, Frierson, Chief Medical Officer, Lee, and currently unknown Department supervisors had a duty to hire, retain, and supervise staff and medical staff who were fit to perform their jobs as jail staff." Compl. ¶ 160. Plaintiff does not allege facts showing a special relationship—as opposed to a general duty of care—between

Defendants and Ortiz.  *See Estate of Osuna*, 392 F. Supp. 3d at 1180–83 (dismissing a negligent hiring, retention, training, or supervision claim where the plaintiff alleged that the county sheriff and doe defendants "as policy-making authorities, had a duty of care to adequately hire, retain, and train the law enforcement officers under their command" and failed to allege a special relationship); *Estate of Alejandro Sanchez*, 2019 WL 1745868, at *11 (same); *see also Kendrick v. County of San Diego*, No. 15-cv-2615-GPC (AGS), 2018 WL 1316618, at *9–11 (S.D. Cal. Mar. 14, 2018) (granting the defendants' motion for summary judgment where the plaintiff "[did] not allege a special relationship existed between [the decedent] and Sheriff Gore").  Thus, as currently pleaded, Plaintiff's claim fails.

In opposition, Plaintiff cites to a Ninth Circuit opinion for the proposition that Ortiz's custody status gives rise to a special relationship.  *See* Doc. No. 15 at 9 (citing *Louie v. United States*, 776 F.2d 819, 828 (9th Cir. 1985) (Pregerson, J., dissenting)); Doc. No. 21 at 8 (citing *Louie*, 776 F.2d at 828 (Pregerson, J., dissenting)).  Plaintiff's reliance on *Louie* is unavailing.  First, Plaintiff *twice* cites to the dissenting opinion, which is not controlling on this Court.  Second, *Louie* involved application of the Federal Tort Claims Act and Washington state law, *see Louie*, 776 F.2d at 824–26, neither of which are at issue in Plaintiff's California negligence claims.  Similarly, Plaintiff's reliance on *Kahalewai v. State of Hawaii Dep't of Pub. Safety*, No. Civ. 15-00009 HG-KSC, 2015 WL 1499639, at *5 (D. Haw. Mar. 31, 2015), is misplaced because the court there applied Hawaii state law and the plaintiff did not assert a negligence claim.

Accordingly, the Court **GRANTS** the County's and individual Defendants' motions and **DISMISSES** Plaintiff's negligent hiring, retention, and supervision claim with leave to amend.  *See Estate of Osuna*, 392 F. Supp. 3d at 1183; *Resendiz*, 2015 WL 3988495, at *8–9.

## G. Intentional Infliction of Emotional Distress – Tenth Cause of Action

Plaintiff's tenth cause of action is intentional infliction of emotional distress against Patron, Unknown Department Personnel, and the County.  *See* Compl. ¶¶ 177–80.

Defendant County argues that Plaintiff's claim does not allege outrageous conduct.  *See* Doc. No. 3-1 at 27; *see also* 7 at 11.  The County asserts that the alleged "interrogation" and "stonewalling and coldhearted treatment" does not amount to outrageous conduct and fails to provide facts "regarding the alleged interrogation or what she considered to be stonewalling or coldhearted treatment other than the delay by Currently Unidentified Department Personnel in speaking to her and a statement that she would not be able to see her son because he was dead."  Doc. No. 3-1 at 28 (quoting Compl. ¶ 178).  Additionally, the County states Plaintiff's allegation that she suffered emotional distress is conclusory.  *See id.*  In seeking to dismiss the claim against Patron, individual Defendants provide similar argument.  *See* Doc. No. 13-1 at 8–10; *see also* Doc. No. 19 at 7–9.

Plaintiff responds to the County's motion that, when viewing the allegations in the light most favorable to Plaintiff, "Patron and Currently Unknown Department Personnel were aware that Plaintiff was in an extremely emotionally vulnerable state after she was told about her son's suicide" and they "were unnecessarily cruel to Plaintiff."  Doc. No. 6 at 22.  Plaintiff also adds that her allegations provide sufficient notice to the County regarding the severity of Plaintiff's emotional distress.  *See id.*  In response to the individual Defendants' motion, Plaintiff responds similarly to her response to the County. *See* Doc. No. 15 at 10–11.

Under California law,

> [a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff[s] suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Evans v. City of San Diego*, 913 F. Supp. 2d 986, 1000 (S.D. Cal. 2012) (quoting *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009)); *see also Christensen v. Superior Court*, 820 P.2d

181, 202 (Cal. 1991).  "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'"  *Hughes*, 209 P.3d at 976 (quoting *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 819 (Cal. 1993)). "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'"  *Id.* (quoting *Potter*, 863 P.2d at 821).

Plaintiff alleges that Defendants' conduct on March 18, 2019 "was extreme and outrageous, including Defendants' stonewalling and coldhearted treatment of Ms. Palacios as her son lay dying as a result of Defendants' reckless and deliberately indifferent conduct."  Compl. ¶ 178; *see also id.* ¶¶ 31–38.  Plaintiff further alleges that Defendants' conduct caused her to suffer "severe emotional distress."  *Id.* ¶ 180; *see also id.* ¶ 38.  The Court finds that stonewalling and coldhearted treatment does not rise to the type of conduct that "exceed[s] all bounds of that usually tolerated in a civilized community."  *Hughes*, 209 P.3d at 976 (quoting *Potter*, 863 P.2d at 819).

As to Plaintiff's allegations pertaining to the jail staff at Central Jail, the Court finds that the jail staff's failure to contact Plaintiff to inform her of Ortiz's medical emergency, *see* Compl. ¶ 31, does not show outrageous conduct.  Plaintiff's allegation that jail staff "rudely" informed Plaintiff that she did not need to keep waiting for a permit to see her son because he died is also insufficient.  *See id.* ¶¶ 35–36.  Mere rude or insensitive behavior does not rise to the level of outrageous.  *Braunling v. Countrywide Home Loans Inc.*, 220 F.3d 1154, 1158 (9th Cir. 2000).

As to Plaintiff's allegations against jail staff at the hospital, the Court further finds that Plaintiff does not plead sufficient facts.  Plaintiff alleges that "[a] currently unknown Department deputy, employee, and/or agent outside [Ortiz's] room stopped [Plaintiff] and her daughter cold—preventing them from seeing [Ortiz] one last time before he died." *Id.* ¶ 34.  The Court finds the unnamed individual's action in barring Plaintiff to visit insufficient to show extreme and outrageous conduct or a calculated intent or recklessness to cause emotional distress.  *See Schwartz v. Lassen County ex rel. Lassen*

*County Jail (Det. Facility)*, 838 F. Supp. 2d 1045, 1061 (E.D. Cal. 2012) (citing *Ochoa v. Superior Court*, 703 P.2d 1, 3–4, 4 n.5 (Cal. 1985) (en banc)).  As to the actions alleging Patron "rudely interrogat[ed] [Plaintiff] and her daughter" after Ortiz's death, Compl. ¶ 38, the Court again finds that rude behavior does not rise to the level of outrageous and that Plaintiff has not shown an intent or recklessness in causing emotional distress.

Even if Plaintiff had provided sufficient facts under the first element, she fails to satisfy the second element of suffering severe or extreme emotional distress.  As a result of her interactions with Defendants, Plaintiff alleges that she suffered "severe emotional distress." *Id.* ¶¶ 38, 180.  "The California Supreme Court has set a 'high bar' for what can constitute severe distress." *Wong v. Jing*, 117 Cal. Rptr. 3d 747, 766 (Cal. Ct. App. 2010) (quoting *Hughes*, 209 P.3d at 976).  The allegation that a plaintiff experienced "'sustained severe emotional distress and mental suffering,' is conclusory and insufficient to state a claim." *Heine v. Vilsack*, No. 1:12-cv-01992-AWI, 2014 WL 7447619, at *4 (E.D. Cal. Dec. 31, 2014) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Nelson v. County of Sacramento*, 926 F. Supp. 2d 1159, 1172 (E.D. Cal. 2013) (finding that the plaintiff's allegations "lack[ed] specific facts to show their nature and extent"); *Steel v. City of San Diego*, 726 F. Supp. 2d 1172, 1191–92 (S.D. Cal. 2010) (finding that the a plaintiff's allegation of suffering "severe and extreme mental and emotional distress" was insufficient).  Instead, a plaintiff must plead "facts that demonstrate he suffered 'emotional distress of such substantial quantity or enduring quality that no reasonable [person] in a civilized society should be expected to endure it.'" *Steel*, 726 F. Supp. 2d at 1192 (quoting *Kiseskey v. Carpenters' Tr. for So. California*, 92 Cal. Rptr. 492, 497 (Ct. App. 1983)).  Therefore, the Court finds Plaintiff's allegation that she suffered "severe emotional distress," Compl. ¶¶ 38, 180, is conclusory and insufficient to demonstrate that she suffered severe or extreme emotional distress.

Accordingly, the Court **GRANTS** the County's and Gore, Frierson, and Patron's motions and **DISMISSES** Plaintiff's intentional infliction of emotional distress claim with leave to amend.  *See Steel*, 726 F. Supp. 2d at 1192.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant County's motion to dismiss; **GRANTS** Defendants Gore, Frierson, and Patron's motion to dismiss; and **GRANTS** Defendant Lee's motion to dismiss.  Although Plaintiff has failed to adequately plead several of her claims against Defendants, it is not clear that she would be unable to do so if given leave to amend as to several of the dismissed claims.  Accordingly, dismissal is with leave to amend as to the following claims: (1) the *Monell* claim regarding the *de facto* customs, policies, or practices of failing to investigate, failing to take remedial actions, and covering up wrongdoing; (2) the ADA claim; (3) the CDPA claim; (4) the negligence claim; (5) the wrongful death claim; (6) the negligent hiring, retention, and supervision claim; and (7) the intentional infliction of emotional distress claim.  *See Knappenberger*, 566 F.3d at 942.  However, dismissal is **without leave to amend** as to the Unruh Act claim.  Plaintiff must file an amended complaint curing the deficiencies noted herein on or before **August 6, 2020**.

**IT IS SO ORDERED**.

Dated: July 22, 2020

HON. MICHAEL M. ANELLO
United States District Judge

44

20-cv-450-MMA (DEB)